IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 28, 2012

**ROGER HATHAWAY, JR. v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Knox County**
**No. 96280      Steven W. Sword, Judge**

_____

**No. E2011-02175-CCA-R3-PC - Filed September 20, 2012**

_____

Petitioner, Roger Hathaway, Jr., pleaded guilty to attempted aggravated arson, attempted second degree murder, and possession of a firearm during the commission of a felony and received a total effective sentence of 12 years to be served at 30 percent. Petitioner appeals the trial court's denial of his petition for post-conviction relief, in which he alleged that he received the ineffective assistance of counsel and that his plea was not voluntarily and knowingly entered. After a careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Roger Hathaway.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

_Facts_

The following is a summary of the stipulated facts as stated by the prosecutor at Petitioner's plea submission hearing:

On March 21, 2009, at approximately 11:30 p.m., a man known as "Rog" drove sisters Lekeya Allen and Latoya Allen from the home of a mutual friend to the Morningside Apartments in a 1980's model dark blue Chevy Caprice. Latoya Allen later identified Petitioner in a photo lineup as the person who drove them home. The women told Petitioner that they would pay him gas money when they arrived at the apartments; however, when they arrived, they went inside and did not take Petitioner any money. Petitioner went to their apartment, and their mother, Debra Allen, answered the door. He asked where the women were and demanded his money, and Ms. Allen told him that the women were inside. He then "got angry, smacked his fist into his hand several times, and said he would be back and that he had something for them."

The following day, at approximately 7:30 p.m., the same man, whom Latoya Allen later identified as Petitioner, knocked on the Allens' door. The women told Andre Emery, the father of Lekeya Allen's children, to answer the door and tell him that they were not there because they owed him money. When Mr. Emery opened the door, a young black male wearing a white hat and white sunglasses was standing there holding a match. Petitioner dropped the match and the door, the floor, and the ceiling caught on fire. He then ran toward the exit to the building. The women and Lekeya's child crawled out of the apartment window, and Mr. Emery ran after Petitioner.

Several witnesses in the courtyard of the building saw a black male wearing a white hat and white sunglasses run from the building toward the parking lot. They then saw smoke coming from the building. The witnesses saw the man seated in the passenger seat of an older dark blue car. He fired several shots at the witnesses from the car. A seven-year-old victim suffered a gunshot wound to his leg.

Police officers found four shell casings in the parking lot, near the exit, where the witnesses reported they saw the man flee. Investigators viewed a security video, which showed a 1980's model dark blue Chevy Caprice drive into the complex on the night of March 21, 2009, at approximately 11:24 p.m. with multiple occupants inside. It left the parking lot at 11:35 p.m. The video taken on March 22, 2009, showed the same vehicle enter the complex at approximately 7:48 p.m. The driver was wearing a white shirt and a white hat.

On March 31, 2009, police officers stopped a blue Chevy Caprice. Petitioner was detained for driving on a suspended license. In the trunk of Petitioner's vehicle, police officers found a Winchester .380 bullet. Ballistics testing determined that the bullet was consistent with shell casings recovered from the scene, and that the bullet and shell casings were created by the same bunter instrument around the same time.

*Post-conviction hearing*

At the evidentiary hearing, Petitioner testified that his trial counsel was court-appointed to represent him. He met with counsel prior to entering his guilty pleas. Petitioner testified that trial counsel reviewed with him some "minor issues" concerning the State's discovery response, but he "did [not] receive all of [his] paperwork." Trial counsel hired an investigator to assist in his case. Petitioner testified that he was not aware that witnesses claimed that he was at the apartment complex on the day of the incident and that he had been there the previous night. He was aware that shell casings were found at the scene and was aware of the results of the ballistics testing. He was also aware that there was a security video of the apartment complex parking lot, but he did not view it.

Petitioner testified that trial counsel hand delivered a letter to him three days prior to his plea submission hearing. Petitioner testified that trial counsel "misadvised [him] of the [sentencing] ranges that [he] was facing," and that trial counsel did not "fully" explain the charges against him and the penalties. He testified that the State initially offered a sentence of 14 years to be served at 30 percent. Petitioner told trial counsel that if the sentence was 12 years, he would sign, but he changed his mind because of "certain circumstances that [he] . . . wasn't comfortable with." He ultimately signed the plea agreement and a waiver of his rights because trial counsel was "pressuring" him and "inflicting bad faith upon [him]." When he signed the plea agreement, Petitioner "thought it was a good deal" and that "everything was going right." Petitioner later felt pressured into signing it, and he testified that he felt he did not have a choice because trial counsel advised him that he "was in major danger of being sentenced to 20 years." Petitioner believed that the minimum sentence he could receive was 15 years to be served at 100 percent.

Petitioner testified that trial counsel advised him that the State's case had "strong spots" and "weak spots" and that it was circumstantial. Petitioner testified that after he pleaded guilty, the Assistant District Attorney stated the facts underlying the offenses, and Petitioner asked trial counsel if he could withdraw his guilty pleas, but trial counsel told him that "it was too late." Petitioner was concerned by the prosecutor's statement that the eyewitnesses stated that the perpetrator wore a hat and sunglasses. Petitioner explained that a hat and sunglasses would have prevented witnesses from positively identifying him as the perpetrator. He testified that trial counsel had not previously told him about the witnesses' statements that the perpetrator wore sunglasses. Petitioner also testified that trial counsel did not explain to him the elements of the offenses for which he was charged and that if he had known, he would not have accepted the plea offer. He testified that he did not know that he was pleading guilty to attempted second degree murder and that trial counsel should have filed a motion to sever the offenses.

Petitioner acknowledged on cross-examination that the trial court inquired about the voluntariness of his pleas and that he had an opportunity to tell the trial court that he was being pressured by counsel. Petitioner testified that he felt "[n]o pressure from the [trial court] judge." Petitioner also acknowledged that he signed a waiver of rights form, but he testified he "never read that form."

Petitioner's trial counsel did not testify at the post-conviction hearing.

*Analysis*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that: "(a) the services rendered by trial counsel were deficient, and (b) that the deficient performance was prejudicial." *Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that the issues of deficient performance by counsel and possible prejudice to the

defense are mixed questions of law and fact. . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by Tennessee Rule of Criminal Procedure 37(b) and Tennessee Rule of Appellate Procedure 3(b). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. *Boykin*, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowing guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make

sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.

At the conclusion of the evidentiary hearing, the post-conviction court found that Petitioner "for the most part" was a credible witness and that trial counsel did not testify to contradict Petitioner's testimony. Based on Petitioner's testimony at the post-conviction hearing, the transcript of the plea submission hearing, and the letter written by trial counsel to Petitioner, the post-conviction court found that there was adequate communication between counsel and Petitioner and that trial counsel "accurately reported the evidence" to Petitioner. The court also found that Petitioner was aware of what the State's witnesses would have testified to at trial, and the court did not find credible Petitioner's statement that he was not aware that witnesses had stated that the perpetrator wore sunglasses. The post-conviction court further found that if Petitioner and his trial counsel had not discussed that fact, that it would not have made a difference.

The post-conviction court found that trial counsel accurately stated the potential penalties Petitioner would face if he was found guilty of the crimes. The court also found that trial counsel did not pressure Petitioner to accept the pleas based on the letter from trial counsel to Petitioner, in which trial counsel stated, "Based on my 21 years of criminal defense experience, I'd encourage you to at least consider it." Additionally, the post-conviction court found that Petitioner

> did raise concerns at the plea [hearing] multiple times about the representation. Ironically, I think that cuts against him in his argument here because what happened when [Petitioner] expressed concerns about the plea deal, he calls the judge to do the proper thing, and that is, to inquire further about what your concerns were, and I find that [the trial court] did, in fact, do the proper thing and ask [Petitioner] repeatedly what [he] wanted to do, if [he] wanted to withdraw this plea, which is the right thing to do. And I have no doubt that [the trial court] would have done that had [Petitioner] at least once stated that [he] did not want to accept this deal.

The post-conviction court concluded that the evidence was clear and convincing that Petitioner was not pressured to accept the plea agreements and that trial counsel provided effective assistance. The court further concluded that Petitioner was not prejudiced by counsel's representation and that there was a reasonable probability that the result would have been the same had trial counsel done what Petitioner claims counsel did not do.

Although trial counsel did not testify at the post-conviction hearing, the evidence shows that trial counsel met with Petitioner prior to Petitioner's plea hearing and that he

discussed with Petitioner the evidence against him and communicated the charges against him and the possible sentences. Petitioner testified at the post-conviction hearing and at the plea submission hearing that he did not know that he was charged with attempted second degree murder; however, the letter from trial counsel to Petitioner clearly states that Petitioner was charged with attempted second degree murder. In the letter, sent two months prior to Petitioner's guilty pleas, trial counsel also evaluated the evidence against Petitioner, stated the potential sentences, and made a recommendation to Petitioner to consider accepting the plea agreement.

The transcript of the guilty plea hearing clearly shows that the trial court apprised Petitioner of his rights and the rights he was waiving by entering his guilty pleas. The trial court allowed Petitioner opportunities to withdraw his guilty pleas. At the outset of the plea submission hearing, Petitioner presented to the trial court a document which apparently purported to indicate other individuals were involved in or responsible for the crimes. The following exchange was then had between Petitioner and the court:

THE COURT: Well, you know, of course, I don't know all the facts around this. You know, I'm here today to take a plea. You know, you're pleading to a couple of serious charges here. You know, it's up to you whether or not you want to – you want to accept this – take this plea or not.

[PETITIONER]: Yes, sir. I didn't understand that I was taking a plea deal to attempted second-degree murder. I thought it was attempted aggravated arson. My lawyer didn't inform me –

THE COURT: Well, it is attempted aggravated arson, and also attempted second-degree murder, and they're going to run concurrent with each other.

[PETITIONER]: My lawyer didn't inform me of the attempted murder. I just found it out when [the Assistant District Attorney] started talking about it.

THE COURT: [Petitioner], you know, my function here today is to either – is to either take this plea from you or not and –

[PETITIONER]:     My –

THE COURT:     I mean, that's it.  Now, if you want – if you don't want to take the plea and you want to go to trial, we'll do that.

. . . .

THE COURT:     You know, it sounds to me, [Petitioner], like you've got some serious questions about whether or not you want to plead here, and I'm reluctant to take a plea from somebody who has serious questions.  Maybe you need to – maybe you need to think about this [ ] a little more.

[PETITIONER]:     I'll take – I'll take the plea deal, sir.

THE COURT:     Excuse me.

[PETITIONER]:     I'll take the plea deal.

THE COURT:     You want to go forward with this?

[PETITIONER]:     Yes, sir.

At the plea submission hearing, Petitioner testified that he did not graduate high school but that he had obtained his GED while in custody.  Petitioner responded that he understood his rights and that he was waiving those rights freely and voluntarily.  Petitioner responded that no one had forced him, threatened him, or pressured him in any way to accept the plea agreement.  Petitioner responded that he was not satisfied with trial counsel's services.  Trial counsel then proposed to the trial court that Petitioner be appointed new counsel and not enter the pleas, and counsel stated that he "was surprised [Petitioner] got an offer like [that], given the state of the evidence."  Petitioner responded, "I just said I wasn't satisfied with my lawyer.  I didn't say I don't want to take the plea deal."  The trial court then gave Petitioner another opportunity to decline the plea offer and stated, "[Petitioner], do you want to go through with this plea or not?"  Petitioner again responded that he wanted to accept the plea offer:

[PETITIONER]:    I take the deal, sir. I just – I just said I wasn't satisfied with my lawyer. I mean, I keep it, you know, honest. But, sir, I take –

THE COURT:    Well, it's not a question of whether or not you personally like the individual. The question is whether or not they've performed – they've performed services on your behalf that are – that are appropriate –

[PETITIONER]:    Then – then –

THE COURT:    – and sounds to me like he has.

[PETITIONER]:    Yes, sir.

We conclude that Petitioner has failed to show that trial counsel's performance was deficient or that he was prejudiced by counsel's alleged deficient performance. Petitioner has not shown that he would not have pleaded guilty and insisted on going to trial had trial counsel informed him of the only evidence that he claims counsel did not communicate, that witnesses stated that the perpetrator wore sunglasses. Finally, we conclude that the evidence does not preponderate against the trial court's finding that Petitioner was not pressured by trial counsel to accept the plea agreement. Petitioner is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE